

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ROKAYIA AGLONU,

               Plaintiff,

             v.

PETER T. ROACH & ASSOCIATES, P.C. and
STEPHEN EINSTEIN & ASSOCIATES, P.C.

               Defendants.

---

**COMPLAINT**

**JURY TRIAL DEMANDED**

# 14 CIV. 8399

## JUDGE BRICCETTI

## INTRODUCTION

1.    This is an action for money damages and declaratory judgment, brought by an individual consumer against defendants Peter T. Roach & Associates, P.C. and Stephen Einstein & Associates, P.C for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA").

2.    Specifically, this action relates to Defendants' illegal and abusive attempts to collect a purported medical debt.

## JURISDICTION AND VENUE

3.    Jurisdiction is conferred by 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

4.    Supplemental jurisdiction over the state law claims is conferred by 28 U.S.C. § 1367.

5.    Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

6.    Venue in this District is proper under 28 U.S.C. § 1391 b(2) because the acts and transactions that give rise to this action occurred, in substantial part, in this district.

## PARTIES

7.    Plaintiff Rokayia Aglonu is a natural person who currently resides in Westchester County,

- 1 -

New York.

8.      Ms. Aglonu is a consumer as defined by 15 U.S.C. § 1692a(3).

9.      Defendant Peter T. Roach & Associates, P.C. ("Roach") is a New York debt-collection law firm, which maintains its principal place of business at 125 Michael Drive, Suite 105, Syosset, New York 11791. Roach's principal purpose is the collection of debts; and it regularly attempts to collect debts alleged to be due to another.

10.     According to its website, Roach describes itself as a "a law firm based in Nassau County, Long Island with a practice limited to enforcement of creditors' rights throughout New York State." The Roach website describes its "Debt Collection group" as "an experienced staff of collectors, legal assistants and attorneys" who are "engaged solely in collecting debts and can assist in the collection of any type and amount of debt, including judgments, promissory notes and accounts receivable," and asserts that they "have been helping businesses recover debt for more than 30 years."

11.     The Roach website continues, asserting that "[o]nce judgment is entered, our lawyers use various tools to locate and restrain assets and income that can be applied to the satisfaction of the judgment. The firm utilizes specifically developed software to locate debtor's bank accounts, enabling restraining notices to be forwarded to those banks which 'freeze' the funds on deposit so they can be garnished and applied towards the judgment."

12.     Roach is a debt collector as defined in the FDCPA §1692a(6).

13.     Defendant Stephen Einstein & Associates, P.C. ("Einstein") is a debt-collection law firm, whose principal purpose is the collection of debts; and it regularly attempts to collect debts alleged to be due to another.

14.     According to its website, Einstein was established in 1989 as a law firm focused on a

"creditor rights, collections, litigation and real estate practice."

15.     The Einstein website further states:

>    Our office prides itself in its organization and technology. . . . Our firm
>    possesses the ability to conduct dialer campaigns, live calls, skip tracing,
>    mass account management, contested litigation and judgment
>    enforcement.   Our clients include property management
>    companies/landlords, major banks, credit unions, finance companies,
>    professional practices, supply houses, distributors, contractors and
>    builders. Our firm also operates a judgment enforcement component that
>    seeks out assets of judgment debtors.

16.     Einstein is a debt collector as defined in the FDCPA § 1692a(6).

## FACTS

17.     Plaintiff Aglonu and her husband Abdul Wahab Leo ("Leo") are both employed, with Aglonu woking as a home attendant and Leo, as a worker at the Somers Manor Nursing Home.

18.     Leo's job is unionized through SEIU, and he has health care coverage for his family through Local 1199 of SEIU ("SEIU insurance coverage.")

19.     Aglonu and Leo are the parents of Akim Wahab ("Akim"), a child born on March 2, 2004 and who is now aged ten.

20.     Akim was born prematurely, is severely disabled, and faced many medical challenges as an infant and toddler.

21.     Westchester Medical Center provided for much of Akim's care over his first four years of life, including the services of a pulmonologist and a cardiologist.

22.     At the time of his birth, Akim was not yet on his father's SEIU insurance coverage. Akim's earliest medical bills were covered by Medicaid only, but Akim was added to the family's SEIU's insurance coverage when the child was two.

23.     After Leo added Akim to his SEIU insurance coverage, Aglonu and Leo informed Akim's medical care providers (including Westchester Medical Center) of the change, explaining that the

SEIU insurance coverage should be treated as the child's primary insurance and Medicaid as the child's secondary coverage.

24.     On or about  March 17, 2008,  Akim (then four years old) burned himself badly and was rushed by Leo (his father) to the Westchester Medical Center, where he was treated.

25.     Westchester Medical Center already had in its possession information about both Akim's SEIU insurance coverage information and his Medicaid eligibility. .

26.     Upon information and belief, Westchester Medical Center had already at that time received payment from SEIU insurance coverage for previous treatments rendered to Akim.

27.     No person at Westchester Medical Center asked Leo about insurance coverage on March 17, 2008, the date that Akim came in with serious burns, or at any other time during that hospital stay.

28.     No person at Westchester Medical Center asked Aglonu about insurance coverage at any time during her child's March 2008 stay at Westchester Medical Center.

29.     Upon information and belief, Westchester Medical Center billed Medicaid and, as a result, on or about April 28, 2008, Westchester Medical Center received payment for Akim's care from Medicaid in an amount totaling over $100,000.

30.     A medical provider who participates in the Medicaid program is barred from seeking any balance unpaid by Medicaid, under both federal law and New York State law.

31.     Upon information and belief, some 22 months later, on or about February 8, 2010, the Office of the Medicaid Inspector General notified Westchester Medical Center that Westchester Medical Center had erred in not billing the private insurance carrier first and relying on Medicaid only for amounts not paid by the SEIU policy.  Medicaid recouped the money paid on behalf of Akim to Westchester Medical Center.

32.    On or about April 25, 2011, Westchester Medical Center, through Roach, its attorneys, initiated an action in Westchester County Supreme Court, under Index No. 9610/2011, captioned Westchester Medical Center v. Rokayi Wahab (the State Court Action).

33.    Upon information and belief, by suing "Rokayi Wahab," Roach was making an attempt to name Rokayia Aglonu as the defendant in the State Court Action.

34.    The complaint states that "the parties hereto entered into an agreement whereby the Plaintiff would render medical services to the Defendant at an agreed-upon value."

35.    This statement is false, inasmuch as (a) there was no such agreement and (b) any medical services rendered were rendered not to Aglonu but to her child, Akim.

36.    The complaint states that "Upon information and belief, Defendant(s) defaulted on payment for medical services rendered and now owes a balance of $160,056.92, plus interest at the statutory rate of 9% from the date of this complaint, no part of which has been paid despite due demand thereof."

37.    This statement is false in two ways: (a) there was never any demand for payment and (b) the plaintiff Westchester Medical Center had, in fact, received payment for its services from Medicaid, on or about April 28, 2008 which was not disclosed to the Court.

38.    The complaint states that "Defendant(s) accepted and received the benefits of the services rendered by Plaintiff."

39.    This statement is false because the Defendant was never a patient at Westchester Medical Center and received no medical services there.

40.    Roach's failure to conduct a meaningful review of the file prior to sending out the verified complaint resulted in the wrongful entry of a judgment against Aglonu.

41.    Had Roach made a meaningful review of the file, Roach would have ascertained  (a) who

the patient was; (b) that over $100,000 was received by Westchester Medical Center from the Medicaid program to reimburse Westchester Medical Center for Akim's care; (c) that no invoices had been sent to Aglonu or to Leo, because Medicaid had promptly paid the outstanding bill; (d) that Westchester Medical Center erred in failing to bill the SEIU insurance before billing Medicaid; and (e) that the error made by Westchester Medical Center caused Medicaid to demand the return of its payments 22 months after payment had been made.

42.     Rather, on information and belief, Defendant Roach's review of Akim's file, if it occurred at all, was extraordinarily cursory and did not involve the exercise of independent attorney judgment.

43.     Instead, on information and belief, the state court complaint was filed without an attorney undertaking any meaningful, independent evaluation and analysis of either the debtor's file or the documents themselves.

44.     Aglonu never received service of the summons and complaint in the State Court action, was not aware of the action and, as a result, failed to answer the summons and complaint.

45.     Due to Roach's failure to serve her with the summons, complaint or any other state court documents, Aglonu did not become aware of the state court action until November, 2013.

46.     Roach sought a default judgment, and in doing so, Roach filed an affidavit sworn to September 22, 2011, by Marie Caprio, the Director of Patient Accounts at Westchester Medical Center.

47.     The Caprio affidavit stated that "after giving the defendant credit for all payments and credits, there is still due the sum of $160,056.92, no part of which has been paid, although payment has been duly demanded." Her affidavit made no mention of the payment made by Medicaid and later rescinded because Westchester Medical Center had not followed the law and regulations

governing Medicaid.

48.     This statement is false in two ways: (a) there was never any demand for payment and (b) the plaintiff Westchester Medical Center had, in fact, received payment for its services from Medicaid, on or about April 28, 2008 which was not disclosed to the Court.

49.     Again, Defendant Roach failed to make a meaningful review of the file before seeking a default judgment. Had Roach reviewed the facts of the case, rather than simply having Ms. Caprio fill in the blanks on a form affidavit, Roach would not have asked her to swear falsely that "there is still due the sum of $160,056.92, no part of which has been paid, although payment has been duly demanded."

50.     The Court granted Westchester Medical Center a default judgment on November 16, 2011.

51.     On or about July 25, 2013, Einstein was substituted for Roach as the attorney of record for Westchester Medical Center.

52.     In or about November of 2013, Einstein first communicated with Aglonu, by sending her a bill from Westchester Medical Center.

53.     This bill had a handwritten note on it, stating, "Here's the itemized statement, to help you get 1199 to open the case," and signed by Raymond Goodson

54.     On information and belief, Mr. Goodson is an employee of Einstein.

55.     Mr. Goodson's note shows that, at the time the November 2013 communication was sent, Einstein knew the underlying facts of the situation (that Westchester Medical Center had erred in billing Medicaid; that Medicaid had demanded a return of the payments it had made; and that the Local 1199 SEIU insurance coverage was rejected this two-plus year old bill.)

56.     Mr. Goodson's note also stated "This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose."

57.    The FDCPA provides at 15 USC 1692g as follows:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing-
> -
>
> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

58.    The initial communication from Einstein did not contain the required information, nor was such information provided within 5 days.

## CAUSE OF ACTION

### Violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*

59.    Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

60.    By undertaking the above referenced collection activities, Defendants violated 15 U.S.C. § 1692 et seq.  Specifically and without limitation:

   a.    Defendant Roach  violated the FDCPA by falsely representing that Aglonu was herself a patient; that Aglonu had received medical care from Westchester Medical Center; that Aglonu had been billed for the services she received; and that Westchester Medical Center had not received payment for its services;   these statements violate 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692f, and 1692f(1);

b. Defendant Roach failed to make a meaningful review of the file prior to filing a complaint in State Court and again when seeking a default judgment, in violation of 15 U.S.C. §1692e(3);

c. Defendant Einstein violated the FDCPA by failing to include the required disclosures necessary under the FDCPA in an initial communication from a debt collector, in violation of 15 USC § 1692g(a);

d. Both Roach and Einstein violated the FDCPA by attempting to collect a debt which could not legally be collected, in violation of 15 USC §§ 1692e(2)(A), 1692e(5), 1692e(10), 1692f, and 1692f(1).

61.     Both Roach and Einstein, in using the State Court Action to attempt to collect this purported medical debt, made false and misleading representations: anyone reading the file of the State Court Action would be gulled into believing that this was a simple case of a patient who had received services that were not covered by insurance and simply refused to pay.

62.     Instead, the facts show that Westchester Medical Center that knew about the family's (two!) insurances but failed to bill the private insurer properly before resorting to Medicaid.

63.     Indeed, a basic review of the file would have revealed that Westchester Medical Center improperly billed Medicaid directly and as a result pocketed a six-figure payment that it was later forced to disgorge.

64.     At that point, Westchester Medical Center could have and should have limited itself to attempting to bill SEIU (whose information WMC had on file for the Akim at all relevant times), even if its tardiness in doing so limited recovery.

65.     Instead, WMC's attorneys – the Defendants in this action – chose to file a deceptive state court action that attempted by means of a host of false and misleading statements to obscure the

file's mishandling and misrepresent the case as one involving simple non-payment by a patient who had received medical services but refused to pay.

66.    In short, the entire course of action of their attorneys was filled with false and misleading representations, in violation of 15 USC §§ 1692e(2)(A), 1692e(5), 1692e(10), 1692f, and 1692f(1).

67.    As a result of Defendants' misconduct, Ms. Aglonu has suffered actual damages, including the costs and attorneys fees associated with defending against the illegally obtained default judgment, as well as anxiety, stress, pain and suffering.

68.    As a result of these violations, Ms. Aglonu is entitled to statutory damages of up to $1,000.00, actual damages, and attorney's fees and costs for this action.

**WHEREFORE,** plaintiff respectfully requests that this Court award:

      (a)    Declaratory Judgment that Defendant's conduct violated the FDCPA;
      (b)    Actual damages;
      (c)    Statutory damages;
      (d)    Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k; and
      (e)    Such other and further relief as law or equity may provide.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated:      October 20, 2014
              Pleasantville, New York

                          Respectfully Submitted,

                          Daniel A. Schlanger, Esq.
                          Schlanger & Schlanger, L.L.P.
                          343 Manville Road
                          Pleasantville, NY 10570
                          T: 914-946-1981, ext. 101
                          F: 914-946-2930
                          daniel.schlanger@schlangerlegal.com